We'll call the case of United States of America v. Keith Allen Cooper, Mr. Siegel. May it please the Court. My name is Dan Siegel and I represent the appellant Keith Allen Cooper. With the permission of the Court, I request three minutes for rebuttal. Granted. There are three reasons why this Court should apply an enhanced non-delegation standard to SORNA. First, SORNA delegates to the Attorney General the authority to define an element of the offense. Second, only Congress is supposed to define the element of an offense. And third, the tension between that principle and the terms of SORNA provides the rationale for adopting the higher standard suggested by the Supreme Court in 2B. So you're saying that the authority to determine who the statute applies to is tantamount to an element? I am. Then why do you say that? In a SORNA prosecution, the government has to prove a duty to register. That duty to register has many sub-elements. In some cases, you have to prove that he was in the state for three days. In another case, the duty might turn upon whether he was a resident of the state. But for pre-SORNA offenders, the duty turns upon the Attorney General's decision as to whether or not he's going to count SORNA convictions which were entered prior to the passage of the SORNA statute. So it's not an exaggeration to say that under SORNA, the Attorney General gets to define that element of the offense. Why isn't it more appropriately framed that what the Attorney General has been given the duty to do is to expand upon the class of potential SORNA offenders here by determining who with sex offenses prior to the date of the act ought to register or not register? The reason that I wouldn't take that tactic... I don't see how the Attorney General is defining a new crime here, but rather expanding the group of people who may be liable. Well, the reason is the Toobie case. In the Toobie case, the Attorney General was given the discretion to do what you're saying, add things. Add drugs to the Attorney General. Add a particular controlled substance. But the Supreme Court referred to that as the discretion to define criminal conduct. That's why Toobie discussed the higher standard. And that's an exact quote of the phrase that's in Toobie, and we cited it in our briefs. So the question is, then, is there a principle that provides a rationale for adopting the higher standard, which was contemplated but not ruled upon by the Supreme Court in Toobie? We've suggested that that principle is the principle that only Congress has the authority to create the elements of a crime. That's why federal court judges don't have the authority to recognize common law crimes. So when the Congress creates that kind of delegation without, in our opinion, an adequate limiting principle, they're creating a serious constitutional problem. Not in civil cases, but in criminal cases where the states are much higher imprisonment rather than... Well, and you're asking for this heightened standard to be applicable only in criminal cases and not civil cases. That's correct. But I'm curious as to where we, as an inferior court, look to for determining just what this heightened standard is. I mean, Toobie doesn't give us much, it seems to me, other than a reference. It doesn't establish doctrine. We have a 1991 case in which the term meaningfully constrains is invoked. Now, a generation has passed since then. And what seems to me to be this ghostly specter of meaningfully constrains has been out there. And in this circuit, we have Judge Sirica's opinion in Amir Nazmi, which makes reference to it. But where in the law, anywhere, do we have anything to grab onto and say, this is what meaningfully constrain means? Would you agree with me that all we have is reference and not doctrine out there? Well actually, there's a factual element and a doctrinal element. The doctrinal element is, of course, the linguistic elements of what they said, a constraint that's meaningful. The other element is the facts of Toobie. What was the statute in Toobie that met the meaningfully constrain standard? What did it do? Well, first, what it did was it put findings on the executive branch. The executive branch had to make findings about the drug's potential for abuse and the high potential for the safety concerns and medical use. Well, the congressman sort of said that the attorney general has to promulgate some regulations. True. Didn't they? So they did not simply punt this yes or no question to the attorney general. They do require more of the attorney general. Certainly, your honor, but what constrains the attorney general in making those regulations and in what way is the constraint meaningful? There were findings required in Toobie, no findings required in SORNA. I'm curious as to why you're not exploring what the principle here is, or perhaps another way of asking it is, is there a principle at all, in the sense most of us understand that word to be, that appears anywhere in the statute? And irrespective of whether we're talking about a heightened standard, which would seem to me still to require some principles, even if you adopted a meaningfully constrains approach, there must be some principles inherent in that approach. Where is there any principle in SORNA? I don't see anything in SORNA that provides the attorney general and gives him directions, say this is the principle that you should apply when you're determining to what extent to count pre-SORNA convictions. But there is a principle that was articulated by Judge Sirica in the Amir Nazmi opinion at page 575, and I think it may be responsive to your question. The courts cited a Supreme Court decision in Whitman v. American Trucking Association, where it says, quote, the degree of agency discretion that is acceptable varies according to the scope of the power congressionally conferred. Now, if Congress is conferring the power on an administrative agency to create a regulation which may result in a fine, maybe a general, broad, intelligible principle standard covers that. But if you're conferring the power to, in essence, create an element of the offense, to consent a guy to jail for 10 years, that's a rationale for being more careful about it, for having a higher standard, for saying to the Congress, please, when you're passing this kind of a statute, give a little thought to how, what guidance you're giving the attorney general. Was Mistretta wrongly decided then, under that view? No. Mistretta has lots of standards to which the Sentencing Commission is required to adhere when they make the sentencing guidelines. They have to consider career offenders, for example, as one. They have to have 85 percent of the maximum sentence for those people. They have to consider recidivism and the needs of protecting the public. Plus, you have that mechanism where Congress reviews it every year and can say no to the guidelines. So, no, Mistretta would meet a meaningfully constrained standard. Toobie and Amirnazi statutes met it, but at a minimum, they had findings. Even if you don't have findings, they had factors. In this case, the Congress didn't articulate the factors that the attorney general should consider. But in the articulation of the purpose of the statute, it told the attorney general, specifically, this is our goal, this is our purpose, should we put this limited group of potential offenders to be liable under the statute? It didn't do what Toobie did, which was create potential criminal conduct, right? Because you added these different drugs. Here, the criminal conduct had already been specified by Congress. All that happened was that the attorney general was asked to consider whether it made sense to also have pre-act offenders covered by the criminalized conduct that Congress had enacted. Well, the first response to your question is that the preamble, the purpose, doesn't specifically direct the attorney general to apply any standard. It's a general statement of purpose of the entire overarching statute. True. But I think that NACDL made a good point on this. Their argument, essentially, is that when you're saying this is a statute to control sex offenders by creating national standards, to say that we have a principle to control sex offenders by creating a national standard doesn't really answer much of a question as to how specifically to apply that. And that's very similar to an argument that Your Honor, Judge Smith, made in the Reynolds remand. So even if you take the position that that rationale, that preamble, that statement of purpose meets the intelligible principle test, and we don't concede that point. But even if you come to that decision, it's difficult to see how there's anything in that that constrains the attorney general and that does so in a meaningful fashion. But all the, the only decision you had to make is covered, not covered. He wasn't talking about any, and he wasn't allowed to do anything else but just determine whether this group of offenders would be covered by the statute, unlike other statutes where the attorney general is not only deciding, you know, what the conduct is, but how, how they're going to implement the regulation at issue. It was really just one tiny little decision, a huge decision for the people covered by it, nonetheless. But it's only a little one. Not tiny if you're swept into the class that's covered. Let me, let me respectfully challenge that assertion for two reasons. First, if it was really a yes or no decision, Congress didn't have to delegate it. Congress could have just made the decision. Well, that's a different subject we can certainly chat about. But the second. Well, I'm not sure it's different. I think that's what I asked you at the outset. And I, I, I continue to be, to be curious as to why you don't see this more as a question of a yes or no question thrown into the lap of the attorney general, which isn't a minor question, it's a major question. And there are no constraints at all on how that answer, on how the answer is to be given yes or no. A, I mean, you would have it be the addition of an element. That's, that's your major argument. That to me sounds like a tougher road to hoe for you than it would be to simply say you're exposing this whole additional class to criminal liability and attorney general, just decide yes or no. We're not going to tell you how. And somehow I have a sneaking suspicion I know how the attorney general, the chief prosecutor in the United States, is going to answer that question. The reason we say that it's not a yes or no decision, in the Reynolds decision, the Supreme Court looked at the same statute and they had to speculate about what it was that Congress was trying to do. And they said, and this is at 981 of the Reynolds decision, Congress might have been concerned about the expense to the states. Congress might have been concerned about administrative feasibility to the states. Congress might have considered different treatments of different kind of offenders. This suggests that the Supreme Court is contemplating a decision that the attorney general has to parse and perhaps can decide to count all, none, or some in between. And the point we're making, the basic point is that if you're going to have a criminal statute that exposes a person to ten years in jail, you should give some guidance to the attorney general on that decision. Either by the way of findings or by the way of factors. Thank you. Thank you very much, Mr. Siegel. Ms. Eisenstein. Eisenstein, Eisenstein? Eisenstein, your honor. Good morning. Alana Eisenstein on behalf of the appellee United States of America. May it please the court. Your honor, the intelligible principle test remains the governing standard for non-delegation decisions. Non-delegation is not a dead letter, and we're not free to declare that somehow the Supreme Court, having not invoked it for, what, since 1932 or 36 or whatever it's been, to strike down an act of Congress, it's there, it's to be dealt with. Your honor, importantly, the Supreme Court- There are commentators who, of course, have said it's a dead letter. Your honor, it is not a dead letter in an important sense, which is that it has been utilized in a very important way, which is to, in the area of constitutional avoidance, as a mechanism for statutory construction. And that is very important here, given the Supreme Court's decision in Reynolds. The Supreme Court in Reynolds had to decide how to interpret this very provision, 16913D, and it did so to decide that the attorney general did indeed have discretion to determine whether and to what degree and in what manner pre-act offenders needed to register under the statute. And it called it an efficient, potential efficient resolution of- Isn't this a different situation, though, where you're adding a new class of people that are going to be affected? I'm straining to find the intelligible principle here. Your honor, the point being is that if the Supreme Court had viewed this as the dissent in Reynolds did, as a potential non-delegation doctrine, it would have- Packing very close to the wind. That's what Justice Scalia said, and indeed, Justice Scalia also dissented in Mastretta and has a distinct viewpoint that has not been adopted by the majority about non-delegation issues. But in- All right, but it's something that Congress had, I agree with you that completely that the Supreme Court has been, I don't want to use the word indulgent, but perhaps forgiving is not inaccurate in terms of what they've been willing to accept as appropriate legislative draftsmanship for purposes of the non-delegation doctrine. But how easy would it have been for Congress here, in the first instance, just to say yes or no with respect to how far this reaches back or whether it reaches back. And secondly, to provide something. I want to hear from the government exactly what it was that Congress said in this statute that we are to construe as any intelligible principle, as Judge Sirica has said, he's straining as I am, to find the principle here, period. Your Honor, when applying the intelligible principle test, there are three elements to it. The first is that there's a general policy, and that's clearly met here. The 169-101 sets forth that the policy- Practically every act of Congress sets forth a general policy. How does that suffice as the articulation of an intelligible principle for non-delegation purposes? Your Honor, well, the policy isn't the only element. The public agency to which it's applied clearly met here. And the third element is the boundaries of the delegated authority. And that can take several forms. One is, as the appellant suggests, a form of making specific findings. It can be procedural requirements. But it can also be a constraint as to the scope of the power. And that is where the Supreme Court in Whitman, this court in Amir Nazmi, quoting Whitman, has recognized that the degree of specific factors, procedural hurdles that the government or that Congress must set up, varies in accordance with the scope of the power. And as Judge Swartz pointed out, the decision that was delegated here, while important to the individuals affected, is extremely bounded in scope. The decision here is defined and limited, which is the terms that have been used in meaningfully constrained context. How is that constrained? How is that bounded in scope in any narrow way? I concede that by framing the question as essentially a yes or no question, the possibilities for resolution are limited. But that does not at the same time suggest to me a narrowness when you are bringing up the potential of criminal jeopardy to who knows how many people. Your Honor, first of all, the government would dispute, and I think the Supreme Court recognized that this isn't just a yes or no question. It's one of timing and logistics. It's one of how these individuals would physically register, something that was set forth in great detail in both the statute and the regulations. And indeed, looking to what the Attorney General in fact did in this case, the applicability of this act to pre-act offenders implicates not only the liability potentially for offenders only who fail to register, important to note, is a civil requirement. The registration requirement is a civil requirement. Criminal liability attends only for those who fail to comply with the act, and for that matter, who travel after the enactment of the act and intercede or foreign commerce. What does the legislative history of SORNA say as to why Congress punted this issue to the Attorney General? Well, Your Honor, the legislative history suggests that as the government failing to prevail at Reynolds, that Congress intended for this act to apply to the, quote, lost 100,000 lost sex offenders and the 500,000 offenders that predated this act, that existed prior to the enactment of this provision. Nonetheless, given the reading of the statute in Reynolds, it certainly strongly suggests that Congress contemplated that these individuals would register. And in Reynolds, the Supreme Court stated that there were multiple reasons why Congress might have done it this way. For one, there might have been- I'm not sure you directly answered my question, which was, what does the legislative history suggest was the reason Congress didn't resolve this themselves? I'm straining, I have, throughout my work on this case, been straining to figure out what's so hard about this that Congress would not have been able to resolve it in the first instance without delegation. Your Honor, I would look to the statutory purpose rather than the legislative history, the statutory structure, I should say. That's my normal course, but this isn't a statutory interpretation question I'm asking. I'm trying to figure out why they didn't do something. Your Honor, and what I meant by that is in 16913A, the way that the registration was contemplated occurring was that there was a provision for initial registration of offenders, which related to their registration upon release from confinement or upon conviction. And then if you look further down as the statute goes on, 16913D relates to those individuals who could not comply with initial registration and pre-act offenders who presumably, as the regulations discuss at length, may have merged into the general population. So a very good reason why Congress may have structured it this way is because they set up a detailed initial registration procedure, a registration procedure for keeping your registration updated upon changes of schooling, employment, or housing and residence. However, for those offenders who have been long out of the system, such as those at issue on 16913D, then that poses an additional logistical hurdle. And as the Supreme Court suggested in Reynolds, it may have been difficult to contemplate instantaneous registration of all those individuals in every jurisdiction in this country. And so giving a time frame and a process by which those individuals, through regulation, made sense. It's also, going back to Judge Sirica and Judge Smith, your earlier questions about where is there a constraint? Where is there an intelligible principle in addition to the general policy statement that was laid out in the first section of the statute? The boundaries of this delegated authority can be found not just in the provision at issue, 16913D, but in the whole structure of this statute. Every aspect, as many of the courts who have upheld the statute, other circuits who have upheld the statute, have recognized every aspect of this statute and this registration scheme has been detailed by Congress in the legislation itself. Who must register? The definition of sex offender and sex offense is lengthy and very explicit. And for that matter, does not constrain registration by time frame or itself limit to pre-act or post enactment, I should say, offenses. The method of registration, the duration of registration, the frequency of registration, and the penalties for failure to comply and the elements of the clearly delineated in the statute. And that itself constraints. But do those constraints go to the essential issue here as to who's covered? Your Honor, it strongly suggests the result. And as the government has, as we've stated earlier, it is not just a yes, no question. It's one where the Attorney General had and did, in fact, make more than just a yes, you're covered, no, you're not. It's, okay, if you're covered, what is the timing and method of pre-act registrants? I'm confused about that. How does strongly suggest the result really help your position here? I mean, it seems to me if it strongly suggests the result, then Congress ought to make the determination themselves that the real issue in these non-delegation cases is you've given a question to be resolved to an administrative agency. And they're going to determine how to resolve that issue. You Congress are going to give them some guidance as to how to go about reaching a determination, perhaps what are important policy considerations to take into account, but that the direction, the constraint is not suggesting a result. I mean, that to me, that to me suggests if you're going to suggest a result, then you just outright ought to say it in the statute. Well, Your Honor, because it's not just a yes, no question first. And second of all, those guideposts are given. Congress set out to establish a comprehensive and national registration system for a particular purpose. And the purpose was to protect the public from a defined class of sex offenders. That is a very targeted statutory scheme. It is unlike, wholly unlike the kind of schemes that were struck down in, for example, Schecter Poultry, where the delegation involved control the national economy, essentially. This is a very narrow area of regulation with a method, a very specific method set forth of how to go about doing that. But did Congress say anything in its delegation or anywhere in the statute? What are the important policy considerations for you, Attorney General, to consider as you go about answering this question that we have delegated to you? Your Honor, I believe that was to protect the public from this class of sex offenders by establishing the comprehensive scheme. The basic purpose of the statute. Yes, but it's beyond that when you look at how, and specifically the kind of decisions that Congress did make. So this court has recognized and the Supreme Court has recognized that you don't look at the narrow provision or delegation at issue, you do look to the policy statements. If you were to apply the meaningful constraints test, first, can you identify any factors that make up that test? And second, would this meet that test if it were to apply? Your Honor, the factors, as I have read, Tooby and also this court's case in Amir Nazmi, that the only additional constraint is that the delegation be, quote, defined and limited. Those are the terms that have been used in those cases. And that perhaps goes beyond the intelligible principle test, which just requires some boundary of the delegated authority. And in this case, Your Honor, we do believe that this provision would meet that standard. The decision that is delegated is highly circumscribed in this case. It is a question of whether a capped and in fact diminishing group of individuals will be subject to a civil registration requirement that is enforced by a criminal sanction. And that is for a very distinct purpose, to register those individuals to protect the public from them. And I do wanna point out the, I see my time is coming short, but the defense makes much of Tooby and the additional procedural constraints therein claiming that this statute doesn't reach the type of constraints in Tooby. But Tooby was less constraining in a very important respect, which was that it was the temporary scheduling of controlled substances was not subject to the rigors of the APA requirements, which this court applied to this very statute in Reynolds 2. And it was not subject to judicial review. And this court and the Supreme Court have stated that judicial review in itself, it countenances against a finding of a non-delegation problem. Didn't Tooby involve questions that needed to be resolved about science, about pharmacology? Weren't there issues of public health tied into all of that that were necessarily wrapped up in that question? Seems to me that Tooby involved a much more technical question than what we have here. Your Honor, the schemes involved and the registration scheme involved, having worked with this extensively, are very complex in terms of the number of jurisdictions, I see my time is up, Your Honor, in terms of the number of jurisdictions, the varying laws and state laws that have been implemented, and the registration, the myriad of registration schemes that have been established. So with that saying it, do you think Congress, is that what Congress had in mind here, that they were relying on the Attorney General to just determine how best to make this work with all 50 states and the territories in the District of Columbia, and the technology that would be involved for record keeping and so forth? I mean, is that really what this was all about? Your Honor, I believe that is what it's about, and I believe that's what the Supreme Court said it was about in Reynolds. But you and I wouldn't have to be believing that if Congress had actually set that out in specific terms, would we? No, Your Honor. Thank you. Thank you. Rebuttal, Mr. Segal. Your Honor, with the permission of the Court, I would like to respond to three points. First, there was discussion about the intelligible principle test asked by Judge Smith. Second, there was a comment by Judge Sirica regarding adding a new class. And third, there was a question from Judge Schwartz regarding how we would apply the meaningfully constraints test. Turning to the first point, when Judge Smith asked counsel for the government about how the intelligible principle standard applies, there was a response that included a reference to the boundaries that were established by the SORNA statute. In fact, there are lots of boundaries. You can't count cases that are too old. You can't count sex offense convictions unless they meet a certain standard. But within that universe, you have a group of pre-SORNA sex offenders who otherwise meet those requirements. And the decision has to be made whether you count all of them or some of them or none of them. There has to be some standard for that. We agree with Judge Sirica that what is essentially happening here is that the Attorney General is being given the opportunity to add a new class of people to SORNA. The way the statute is written, you can't count pre-SORNA convictions based on the statute alone. It takes action by the Attorney General. And that essentially, in our opinion, is the discretion to define an element of the crime. To respond to the question by Judge Schwartz, how would you apply the meaningfully constrained test? At a minimum, you would just require something that's a little beyond the intelligible principle standard, either what was done in Toobie, which was to require findings on certain points, or at a minimum, to identify the factors that go into the Attorney General's decision. And it's not too much to ask the Congress to amend the statute to do that. Mr. Siegel, a meaningfully constrained standard, an enhanced standard, still requires an intelligible principle, or plural, right? I mean, if a court were to craft that heightened standard, it builds on intelligible principle. It is an intelligible principle or principles that meaningfully constrain. Is that, would you accept that? Either the intelligible principle has to meaningfully constrain, or there has to be something else in the statute that meaningfully constrains. How do you respond to your adversary's characterization that really all this did was not really criminalize something, but it just captured a group of individuals who have to civilly register, and that the criminal component is to enforce noncompliance with that civil requirement? Because you're drawing a distinction. This is a criminal case, heightened standard. How do you respond to that? We just have to disagree with that. At the end of the day, as a result of these administrative proceedings, a person is going to jail for up to 10 years. And what goes into that decision are the elements of an offense. You have to prove a duty. Duty has different components in different kinds of SORNA cases. Sometimes you have to prove residency is the key issue. Sometimes the amount of time in the state is the key issue. But in this case, it's a question of whether or not you count the prior convictions. And that, in our opinion, meets the decision of an element of the offense, because it delegates the discretion to define an element of the criminal offense. Thank you, Your Honor. Thank you, Mr. Siegel, Ms. Eisenstein. A very well-argued case, well-briefed case, and a very interesting and compelling issue. We thank you both for all your assistance. We'll take the matter under advisement.